IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 04-50 Erie |
| ) | |
| JOHN JOSEPH PRICE, JR. ) | |

**DEFENDANT JOHN JOSEPH PRICE, JR.'S MOTION TO SUPPRESS**
**WITH CITATION TO AUTHORITIES**

AND NOW, comes the defendant, John Joseph Price, Jr., by his attorney, Thomas W. Patton, Assistant Federal Public Defender, and respectfully moves the Court to suppress evidence found during a warrantless search of his home. In support thereof Counsel states:

1. Mr. Price has been charged in a seven-count indictment with manufacturing methamphetamine, attempting to manufacture methamphetamine, and possessing pseudoephedrine, sodium hypophosphite, hydriodic acid, iodine, and acetone with intent to manufacture methamphetamine in violation of Title 21 U.S.C. § 841(a) and 841(b)(1)(C), 846, and 841(c)(1) respectively.

2. The charges against Mr. Price stem from a warrantless search of his home on October 5, 2004. On that date, Mr. Price was arrested by members of the Pennsylvania Attorney General's Clandestine Lab Response Team on an outstanding arrest warrant from the Erie County Court of Common Pleas for charges of delivery of a controlled substance. Mr. Price was arrested at his place of work.

3. Following Mr. Price's arrest, law enforcement officers went to his home at 8350 Page Road, Wattsburg Pennsylvania.

4. When the officers arrived at Mr. Price's home, Mr. Price's daughter, Olivia Borja, who was fourteen, answered the door. Olivia told the officers that her step-mother, Debbie Fisher was at work. The girl gave the officer her mother's work telephone number and Pennsylvania State Trooper Ron Wilson called Mr. Price's girlfriend, Debbie Fisher. Trooper Wilson told Ms. Fisher that Mr. Price had been arrested and asked Ms. Price to come home. Ms. Fisher agreed to come home, but ran out of gas on the way. Police officers went to Ms. Fisher's car and brought her to the house.[1]

5. When Ms. Fisher arrived at the house Trooper Wilson and Agent Randal Schirra of the Pennsylvania Office of Attorney General, Bureau of Narcotics Investigation and Drug Control told Ms. Fisher that they were looking for a stolen ATV and chemicals used in the manufacture of methamphetamine.

6. Trooper Wilson and Agent Schirra asked for permission to search the house and Ms. Fisher refused to give permission for a search of the house although she did give the officers permission to look around outside the house.

7. When Ms. Fisher went inside the house, Agent Schirra followed her into the house. Ms. Fisher again told Agent Schirra that he could not search inside the house. Ms. Fisher went into her and Mr. Price's bedroom, after unlocking the padlock that had been securing the bedroom door. Agent Schirra followed Ms. Fisher into the bedroom without permission.

8. While in the bedroom, Agent Schirra opened a dresser drawer that had been closed. There

---

[1] Counsel is in the process of obtaining an affidavit from Ms. Fisher swearing to the facts set forth in this motion. Counsel has confirmed these facts with Ms. Fisher but she is now living in California which is making the logistics of obtaining her affidavit swearing to the facts difficult. When Ms. Fisher's affidavit is received by counsel, it will be filed with the Court.

was drug paraphernalia in the dresser drawer which Agent Schirra seized. Agent Schirra began to open a second door and Ms. Fisher again told Agent Schirra that he did not have her permission to search inside the house. Ms. Fisher and Agent Schirra then left the bedroom.

       9. Ms. Fisher then went outside with Agent Schirra following. Ms. Fisher saw several police officers standing around an ATV. Ms. Fisher told the officers that she had never seen the ATV before and they told her it had been found underneath some carpets.

       10. Agent Schirra and Trooper Wilson then walked to the basement door which was located on the outside of the residence (the basement is not accessible from inside the residence). Trooper Wilson and Agent Schirra asked Ms. Fisher if they could search the basement and Ms. Fisher told them that the door was locked and she did not have a key. Ms. Fisher also told Trooper Wilson and Agent Schirra that the basement was not accessible from inside the house. Trooper Wilson and Agent Schirra asked Ms. Fisher again for permission to search the basement and she again told them that the door was locked and she did not have a key. Ms. Fisher told the agents that they could not break into the basement.

       11. Trooper Wilson then took a pocket knife from his pocket and used the knife to "jimmy" the basement door open. Ms. Fisher again told Trooper Wilson and Agent Schirra that they could not search the basement but Agent Schirra went into the basement. Agent Schirra came out of the basement within a few minutes and told Ms. Fisher that there were chemicals in the basement and that everyone had to leave the house.

       12. After Agent Schirra had searched the basement, he asked Ms. Fisher to sign a written form giving consent for a search of the basement but Ms. Fisher refused to sign the consent form.

       13. Agent Schirra then prepared an application for a search warrant asking for permission

to search Mr. Price's house. The affidavit explained the events described above, however, Agent Schirra's affidavit claimed that Ms. Fisher had consented to a search of the house and had consented to a search of the basement as long as the officers did not have to break down the basement door.

14. United States Magistrate Judge Susan Paradise Baxter issued a search warrant for Mr. Price's home. A copy of the search warrant and the affidavit in support of the search warrant are attached as Defendant's Exhibit A.

15. The search warrant was executed and numerous items used to manufacture methamphetamine were found in the basement. The evidence seized from Mr. Price's basement is the basis for the federal charges against Mr. Price.

16. Where the validity of a search rests on consent, the government has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given. Florida v. Royer, 460 U.S. 491, 497 (1983) (plurality); Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973). In this case, neither Mr. Price nor Ms. Fisher consented to the search that lead to the discovery of the methamphetamine related evidence found in the basement so the initial search of the basement violated the Fourth Amendment.

17. The officers used the results of the illegal "consent" search to obtain a search warrant. Thus the fruit of the illegal search was used to obtain the warrant. In such cases a court faced with a suppression motion must excise the tainted information from the warrant application to determine if the application, absent the tainted evidence, establishes probable cause. United States v. Herrold, 962 F.3d 1131, 1138 (3rd Cir. 1992). If the application does not establish probable cause to support the issuance of the warrant absent the illegal fruit, any evidence found pursuant to the warrant must be suppressed. If the warrant application does establish probable cause without reference to the

illegal fruit, the Court must then determine whether the law enforcement officers' decision to seek a warrant was prompted by what they found during the illegal search. Id. at 1140. If so, the evidence found pursuant to the warrant must be suppressed. Id.

18. The only basis for establishing probable cause to search Mr. Price's home identified in Agent Schirra's affidavit in support of the search warrant is the fact that he found items used to manufacture methamphetamine during his warrantless search of the basement. When that information is excised from the affidavit, the affidavit presents no probable cause to support a search of Mr. Price's home.

WHEREFORE, defendant, John Joseph Price, Jr., respectfully requests that this Honorable Court have a hearing on this motion and enter an Order suppressing the evidence found as a result of the warrantless search of his home.

                Respectfully submitted,

                /s/ Thomas W. Patton
                Thomas W. Patton
                Assistant Federal Public Defender
                PA I.D. No. 88653