AO 93 (Rev. 5/85) Search Warrant

# United States District Court

WESTERN DISTRICT OF PENNSYLVANIA

In the Matter of the Search of

8350 Page Road
Wattsburg, Pennsylvania
(Venango Township)

**SEARCH WARRANT**

CASE NUMBER:

TO: __Narcotics Agent Randall T. Schirra, Sr., PAOAG-BNI__ and any Authorized Officer of the United States

Affidavit(s) having been made before me by __Agent Schirra__ who has reason to
                                              Affiant

believe that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

8350 Page Road, Wattsburg (Venango Township), Pennsylvania, Erie County; a one story single family ranch style residence with a basement and garage accessible from the outside; outside faced with red siding; separate detached garage behind the residence.   see attached picture

in the _____Western_____ District of _____Pennsylvania_____ there is now concealed
a certain person or property, namely (describe the person or property)

Please see Attachment A

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before __October 15, 2004__
                                                              Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (~~in the daytime—6:00 A.M. to 10:00 P.M.~~) (at any time in the day or night as I find reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to _____ as required by law.

                          U.S. Judge or Magistrate

__10/6/04 at 2:10 p__                at   __Erie, PA__
Date and Time Issued                         City and State

__SUSAN PARADISE BAXTER, U.S. Magistrate Judge__   __Susan Paradise Baxter__
Name and Title of Judicial Officer                  Signature of Judicial Officer

AO 93 (Rev. 5/85) Search Warrant

| RETURN | | | CASE NUMBER |
|---|---|---|---|
| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH | |

| INVENTORY MADE IN THE PRESENCE OF |
|---|
| |

| INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT |
|---|
| |

### CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____   _____
U.S. Judge or Magistrate Judge                Date



# ERIE COUNTY
*Pennsylvania*

My Erie County:  Login | Register

Printable Version | Assessment Office | Email to a friend

Profile | Photos | Map | Neighborhood Sales | Tax

Address: 8350 PAGE RD                                                    Parcel:

- Home
- County Executive
- Elected Officials
- Departments and Offices
- Economic Development
- Recreation and Tourism Information
- Communities
- Site map

**Photos**



IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Magistrate No.
**(Under Seal)**

### SEARCH WARRANT

### ATTACHMENT A

1. Methamphetamine and any other illegal controlled substance, any and all devices used to store, manufacture, and/or ingest methamphetamine or any controlled substance.

2. Books, records, receipts, notes, ledgers, and other documents and papers relating to the manufacturing, distribution, purchasing, transportation, maintaining and storing of controlled substances namely methamphetamine.

3. Books, records, receipts, bank statements, credit documents, money drafts, money orders, cashiers checks, and other documents evidencing the obtaining, secreting, transferring and concealing of assets, and the obtaining, secreting, transferring and/or concealment of expenditures of money.

4. Any and all financial proceeds and tangible property from transactions involving controlled substances, namely methamphetamine.

5. Photographs, video tapes, disks, negatives, film depicting individuals, occupants, assets, and controlled substances.

6. Firearms, including but not limited to pistols, revolvers, shotguns, rifles, as well as any ammunition and/or prohibited weapons.

7. Pagers, cell phones, answering machines, computers, portable electronic calendars and other electronic devices used to store records, documents, materials, information and communications concerning the manufacturing, purchasing and distribution of chemicals, and controlled substances, namely methamphetamine and the information stored on these devices.

8. Chemicals, laboratory equipment and other apparatus used in the production, storage or transportation of methamphetamine, listed chemicals and other controlled substances.

9. Indicia of occupancy, residency, rental and ownership of property to include utility bills, U.S. mail, and vehicle registration.

10. Any counter-surveillance devices and equipment.

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Magistrate No.

**(Under Seal)**

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

I, Randall T. Schirra, Sr., being duly sworn, depose and say:

1. I am a Narcotics Agent of the Pennsylvania Office of Attorney General, Bureau of Narcotics Investigation and Drug Control (PA-OAG-BNI), and have been so employed for 5 ½ years. I am presently assigned to the Region 7 Office located in Erie, Pennsylvania. Prior to my employment with PA-OAG-BNI I was employed as a Police Officer with the Borough of West Homestead, Pennsylvania Police Department for 6 years.

2. This Affidavit is submitted in support of an application for a search warrant for the property located at 8350 Page Road, Wattsburg (Venango Township) Pennsylvania to include the residence, any and all outbuildings, sheds and structures, and vehicles located on the property.

3. I am currently assigned to the Pennsylvania Attorney General's Clandestine Lab Response Team. In that capacity I am involved in state and federal Clandestine Lab Investigations. I have received specialized training in investigating, identifying and dismantling clandestine laboratories. I have participated in

the investigation and prosecution of numerous traffickers involved in the manufacture and distribution of controlled substances. I have participated in more than one hundred investigations involving the manufacture and distribution of methamphetamine and listed chemicals. I have identified and seized numerous assets representing proceeds of narcotics trafficking. I am currently assigned to the investigation of John Joseph Price, Jr. involving the manufacture and distribution of methamphetamine throughout the Erie County, Pennsylvania area. Information in this investigation was obtained from other federal and state investigators as well as concerned citizens and confidential sources, including, but not limited to, local police officers, Pennsylvania State Police Troopers, Agents with the Pennsylvania Attorney General's Bureau of Narcotics Investigation.

    4. Based upon my training, experience and expertise as a Narcotics Agent of the Pennsylvania Office of Attorney General, Bureau of Narcotics Investigation and Drug Control, who has investigated numerous violations of federal statutes concerning controlled substances, I know that:

    a.    Persons engaged in the manufacturing and distribution of controlled substances, namely methamphetamine, often maintain records, books, receipts, notes, ledgers, money orders and other documents and papers reflecting the acquisition, transportation, disposition and distribution of chemicals, and controlled substances, proceeds and expenditures of and for those

activities.

      b. Methamphetamine is a Scheduled II controlled substance which can be manufactured in clandestine laboratories.

      c. Drug traffickers amass large amounts of currency from the sale of illicit drugs.

      d. Persons involved in drug trafficking conceal in their residences and businesses caches of drugs, amounts of currency, financial instruments, and other tangible property, precious metals, jewelry, firearms and other items of value, proceeds of drug transactions and evidence of financial transactions. These items are often secreted in hidden compartments or buried underground or hidden in vehicles.

      e. Methamphetamine producers maintain chemicals, precursors, glassware and other apparatus used to produce methamphetamine, and store chemicals and other ingredients used to manufacture methamphetamine.

      f. Methamphetamine producers maintain "recipes" and other instructions utilized to manufacture methamphetamine. These recipes are often maintained and stored in computers and other electronic devices, files and electronic storage. These items are often secreted in hidden compartments or buried underground or hidden in vehicles.

      g. Individuals manufacturing methamphetamine often equip their residences with surveillance equipment to detect the presence of police and others.

   h. Methamphetamine manufacturers are aware that the production of methamphetamine produces acute odors and fumes. In order to avoid detection they often manufacture methamphetamine in remote isolated areas or utilize exhaust fans to ventilate areas.

  5. On April 5, 2002, your affiant, in an undercover capacity, purchased approximately a quarter gram of methamphetamine from John Joseph Price, Jr. in the City of Erie. Subsequently, your affiant filed a criminal complaint against Price charging him with Unlawful Delivery of methamphetamine and Possession with Intent to Deliver methamphetamine, in violation of 35 Pa.C.S.A. § 780-113(a)(30).

  6. Price eluded law enforcement authorities until October 5, 2004, when your affiant and other law enforcement officers apprehended Price on Marchmont Road in Erie County, Pennsylvania. Upon his arrest, Price was found to be in possession of items indicative of methamphetamine trafficking, including plastic baggies with methamphetamine residue and PH papers used to gauge the acidity of the methamphetamine production process.

  7. Subsequent to Price's arrest, your affiant and other law enforcement officers traveled on October 5, 2004, to Price's residence at 8350 Page Road, Wattsburg (Venango Township) Pennsylvania, to further the investigation into Price's methamphetamine trafficking activity.

  8. Upon arrival at the residence at 8350 Page Road, your affiant knocked on the door of the residence to determine if anyone

was present inside the home. A girl, subsequently determined to be 14 years of age, answered the door and indicated that her mother, Debbie Fisher, was working. Your affiant knows that Debbie Fisher resides at 8350 Page Road and is Price's girlfriend.

9. The fourteen year old girl then indicated that she did not know when her mother, Debbie Fisher, was going to return to the home. The girl then advised your affiant that she could call her mother but she did not have a phone. Your affiant then informed the girl that he had a cell phone and the girl provided Debbie Fisher's work phone number to Pennsylvania State Police Trooper Ronald Wilson.

10. Trooper Wilson then telephoned Debbie Fisher at her place of work to explain that her boyfriend had been arrested and that law enforcement officers were at her residence and her children were alone.

11. Debbie Fisher then indicated that she would immediately leave work and come home. Approximately thirty minutes later Debbie Fisher arrived at 8350 Page Road. Trooper Wilson and your affiant then informed Fisher that her boyfriend had been arrested and there was information that there was a stolen ATV on the property and that there was possibly a methamphetamine lab in the basement of the residence. Fisher was then asked by your affiant if she would agree to let your affiant enter the residence to look for items related to methamphetamine production and trafficking. Fisher agreed without hesitation and escorted your

affiant into the residence.

12. Upon entry into the residence your affiant saw in plain view in an open drawer of a plastic dresser in the master bedroom several glass pipes with residue that your affaint knows from experience are used to ingest controlled substances. Prior to your affiant's entry into the master bedroom, Fisher unlocked the master bedroom door to allow entry.

13. Subsequently, Fisher escorted your affiant to the basement of the residence. The door to the basement was locked and Fisher did not have the key. Fisher then indicated that your affiant could enter the basement so long as the basement door did not have to be broken down. Moreover, Fisher indicated that she had regular access to the basement as that was where the laundry area was located. Your affiant and Trooper Wilson then gained entry into the basement by using a knife to open the door.

14. Upon entering the basement, your affiant immediately saw in plain view numerous items indicative of methamphetamine manufacturing, including a can of acetone, a plastic tote with rubber tubing inside, a funnel, a jar believed to contain iodine, and a large garbage bag filled with opened pseudoephedrine blister packs containing no pseudoephedrine. Also located was a bag containing two plastic containers one of which contained a clear liquid with a white substance on the bottom which your affiant believes to be extracted or broken down pseudoephedrine tablets.

15. After finding these items, your affiant, mindful of

the danger posed by many of the chemicals used to manufacture methamphetamine, told Fisher that the area had to be secured for her family's safety. Fisher was then asked to provide written consent to search the property and at that time indicated that she wanted the officers to obtain a search warrant.

16. Your affiant believes that a night time search warrant is necessary because of the hazardous nature of the items located on the property at 8350 Page Road, and the possibly dangers posed to law enforcement officers, the occupants of the residence and the community in general. Moreover in light of the obvious presence of dangerous contraband inside the residence at 8350 Page Road, law enforcement officers are currently securing the residence and waiting until 6:00 am could result in the destruction of evidence if law enforcement is unable to continue securing the area.

WHEREFORE, based upon the foregoing, I have probable cause to believe that located at the property and premises known as 8350 Page Road, Wattsburg (Venango Township) Erie County on which is located a single family one story ranch style residence faced with red siding, there is presently the following evidence:

1. Methamphetamine and any other illegal controlled substance, any and all devices used to store, manufacture, and/or ingest methamphetamine or any controlled substance.

2. Books, records, receipts, notes, ledgers, and other

      documents and papers relating to the manufacturing, distribution, purchasing, transportation, maintaining and storing of controlled substances namely methamphetamine.

3. Books, records, receipts, bank statements, credit documents, money drafts, money orders, cashiers checks, and other documents evidencing the obtaining, secreting, transferring and concealing of assets, and the obtaining, secreting, transferring and/or concealment of expenditures of money.

4. Any and all financial proceeds and tangible property from transactions involving controlled substances, namely methamphetamine.

5. Photographs, video tapes, disks, negatives, film depicting individuals, occupants, assets, and controlled substances.

6. Firearms, including but not limited to pistols, revolvers, shotguns, rifles, as well as any ammunition and/or prohibited weapons.

7. Pagers, cell phones, answering machines, computers, portable electronic calendars and other electronic devices used to store records, documents, materials, information and communications concerning the manufacturing, purchasing and distribution of chemicals, and controlled substances, namely methamphetamine and the information stored on these devices.

8. Chemicals, laboratory equipment and other apparatus used in the production, storage or transportation of methamphetamine, listed chemicals and other controlled substances.

9. Indicia of occupancy, residency, rental and ownership of property to include utility bills, U.S. mail, and vehicle registration.

10. Any counter-surveillance devices and equipment.

The above information is true and correct to the best of my knowledge, information and belief.

*[signature]*
Randall T. Schirra, Sr.
Narcotics Agent
Pennsylvania Office of Attorney General Bureau of Narcotics Investigation and Drug Control

Sworn and subscribed to before me
this 6th day of October, 2004

*[signature]*
SUSAN PARADISE BAXTER
United States Magistrate Judge