IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.        ) | Criminal No. 04-50 Erie |
| ) | |
| JOHN JOSEPH PRICE, JR.   ) | |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

AND NOW comes the United States of America, by and through its counsel, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, and Christian A. Trabold Assistant United States Attorney for said district, and states as follows:

**I.  Background**

Price was indicted by a federal grand jury on November 9, 2004.  The indictment charges Price with one count of manufacturing methamphetamine (21 U.S.C. §§841(a)(1) & 841(b)(1)(C)); one count of attempting to manufacture methamphetamine (21 U.S.C. §846); and five counts of possession of various listed chemicals with intent to manufacture methamphetamine (21 U.S.C. §841(c)(1)).

On October 5, 2004, at approximately 6:45 P.M., Price was arrested at a garage near Route 97, just south of Interstate 90, on an outstanding arrest warrant from the Erie County Court of Common Pleas for delivery of methamphetamine.  When arrested, Price was found to be in possession of methamphetamine.  The arrest was the result of information received from confidential sources who

indicated that Price was at the garage where he was ultimately arrested. Source information also indicated that Price had methamphetamine making material and a stolen ATV at his house on Page Road. Law enforcement officers also had information that Price was known to cook methamphetamine at his house. Based upon this information, the officers traveled to Price's home at 8350 Page Road, Wattsburg, Pennsylvania.

Upon arrival, the officers knocked on the front door. Price's fourteen year old daughter and nine year old son answered the door. When the officers asked if an adult was home, Price's daughter informed the officers that her step-mother, Debbie Fischer, was at work. Trooper Ron Wilson then obtained Fischer's work phone number and called her at work. Trooper Wilson informed Fischer that Price had been arrested and asked her to come home as the children were home alone. Fischer then left work to come home but ran out of gas on the way. Officers then went to Fischer's location and transported her to the house.

When Fischer arrived at the house, Trooper Wilson and Agent Randall Schirra of the Pennsylvania Attorney General's Bureau of Narcotics Investigation informed her that they had information that Price was involved in making methamphetamine in the residence. Fischer then indicated that she and Price do smoke methamphetamine but they do not cook it. Agent Schirra then explained the dangers of making the drug and the chemical hazard it is to Fischer and her children. Agent Schirra then asked Fischer if she would give

consent to search the residence. Fischer then provided verbal consent.

Once inside the house, Fischer led Agent Schirra to the bedroom she shared with Price. In order to gain entry, Fischer unlocked the bedroom door, which was padlocked. Once inside the bedroom, Agent Schirra found glass pipes with suspected methamphetamine residue and a baggie containing a white crystalline substance on a dresser and inside a dresser drawer. Fischer and Agent Schirra then went outside to the garage, the only way to access the basement. Fischer then indicated that she did laundry in the basement, which was also used for storing items such as Christmas decorations. Agent Schirra and Trooper Wilson then asked Fischer if they could enter the basement, which was locked. Fischer replied that she did not have the key to the basement door. Trooper Wilson then asked if he and Agent Schirra could search the basement if they could get the door opened. Fischer agreed to let the officers into the basement as long as the door was not damaged. Trooper Wilson then utilized a pocket knife to gain entry, without damaging the door. Trooper Wilson and Agent Schirra then entered the basement.

After a short time in the basement, Agent Schirra discovered chemicals, equipment, containers of what appeared to be dissolved pseudoephedrine tablets, and empty pseudoephedrine blister packs, all of which he believed were indicative of the methamphetamine manufacturing process. Agent Schirra then

immediately determined that the house needed to be secured and the clandestine lab team needed to be contacted to process and clean up the suspected lab.

Upon exiting the basement, Agent Schirra informed Fischer that she must get her children out of the house immediately for their safety. Fischer was also advised that she should take her children to the hospital so they could be checked for chemical and methamphetamine contamination.

Agent Schirra then requested that Fischer sign a written consent to search form. Fischer then refused to sign a consent form and indicated that she wanted the officers to quit searching the residence. All searching then ceased immediately and Agent Schirra then secured the scene so as to prevent injury from exposure to the chemicals and preserve evidence. A federal search warrant was then obtained at approximately 2:10 A.M. on October 6, 2004.

The execution of the search warrant then resulted in the seizure of numerous chemicals used in the manufacture of methamphetamine. Those chemicals form the basis of the government's case against Price.

## II.  Argument

It is well settled that law enforcement officers may conduct a search without probable cause or a search warrant based upon an individual's voluntary consent, and any evidence discovered during such a search may be seized and admitted at trial.

Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); United States v. Lockett, 406 F.3d 207, 211 (3d Cir. 2005); United States v. Givan, 320 F.3d 452, 459 (3d Cir. 2003). While consent must be voluntary, it may be express or implied and need not be knowing or intelligent. Schneckloth, 412 U.S. at 235; Lockett, 406 F.3d at 211. Further, consent "may be given unintentionally and without knowledge of the right to refuse consent, and the police are not required to warn an individual of the right to refuse consent." Lockett, 406 F.3d at 211, citing Schneckloth, 412 U.S. at 235.

The voluntariness of a person's consent is a question to be determined from the totality of the circumstances. Givan, 320 F.3d at 459, citing Schneckloth, 412 U.S. at 227. The critical factors that make up a totality of the circumstances analysis are "the setting in which the consent was obtained, the parties' verbal and non-verbal actions, and the age, intelligence and educational background of the consenting individual." Givan, 320 F.3d at 459, citing United States ex rel. Harris v. Hendricks, 423 F.2d 1096, 1099 (3d Cir. 1970).

In this case, Fischer voluntarily consented to the search of her residence by Agent Schirra and Trooper Wilson. Fischer is 39 years of age and has two at least prior involvements with the criminal justice system in California, once for a burglary related incident and once for a controlled substance offense.

She freely allowed access to her bedroom and basement. At no point was undue pressure exerted on Fischer to force her to

consent. She was not under arrest or handcuffed. The officers did not have their guns drawn. Fischer was obviously aware of her right to refuse or revoke consent because she did, in fact, revoke her consent, which then caused the officers to obtain a search warrant based upon the items they had observed during the consent search.

Moreover, the officers conduct is not indicative of an effort to run roughshod over Fischer's rights. When informed that Fischer was not home by her children, the officers did not take advantage of the situation and barge into the residence. Rather, they called Fischer and made sure that she was at the residence prior to their entry. Likewise, the moment Fischer revoked her consent the officers ceased searching and obtained a search warrant. This is not conduct suggestive of renegade officers with no concern for a citizen's rights, who would do anything to obtain evidence. Thus, since Fischer voluntarily consented to the search which formed the basis for the search warrant, the evidence was lawfully seized pursuant to a valid search warrant.

WHEREFORE, for the foregoing reasons the government respectfully requests that Price's Motion to Suppress be denied.

Respectfully submitted,

MARY BETH BUCHANAN
United States Attorney


s/Christian A. Trabold
CHRISTIAN A. TRABOLD
Assistant U.S. Attorney
PA ID No. 75013