IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA

v.                    CRIMINAL NO. 04-50 ERIE

JOHN JOSEPH PRICE, JR.



SENTENCING




Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Tuesday, October 10, 2006.




APPEARANCES:
CHRISTIAN A. TRABOLD, Assistant United States
Attorney, appearing on behalf of the Government.

THOMAS W. PATTON, Assistant Federal Public

Defender, appearing on behalf of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

1          P R O C E E D I N G S

2

3          (Whereupon, the proceedings began at 1:30 p.m.,

4  on Tuesday, October 10, 2006, in Courtroom C.)

5

6          THE COURT:  This is the time that we've set for

7  sentencing in the case of United States versus Price at

8  Criminal No. 04-50 Erie.  And there has been an objection filed

9  to the presentence report by the defendant.  Specifically,

10  objecting to the government's failure to have moved for an

11  additional third point pursuant to United States Sentencing

12  Guideline 3E1.1(b).  And this is an issue that we need to

13  resolve before we move on to sentencing.  All right, Mr.

file:///A|/PRICESEN.TXT

14  Patton, you've got the pulling oar here.

15       MR. PATTON:  Your Honor, I believe both parties

16  agree that you can review the government's refusal to make a

17  motion for the third point basically along the lines that have

18  been outlined over the years by various Courts of Appeals --

19       THE COURT:  It's the same standard as I would apply

20  in passing upon the failure to move for a downward departure

21  under 5K?

22       MR. PATTON:  Correct.

23       THE COURT:  I agree with that, that's the

24  appropriate backdrop.

25       MR. PATTON:  Okay.  It is our position in this case

3

1  the government's refusal to move for the third point, number

2  one, punishes Mr. Price for exercising his constitutional right

3  to have this court determine whether or not the evidence seized

4  from his house was seized in accordance with the Fourth

5  Amendment.  And, also, that the government's denial of the

6  motion is not rationally related to a legitimate government

7  objective.

8          First, you want to deal with why didn't they give

9   the third point in this case.  As I see from the government's

10  papers, the only reason they're not giving it is because a

11  motion to suppress was filed.  In a footnote, the government

12  says here are some things that we consider.  And we consider it

13  on a case-by-case basis --

14          THE COURT:  Mr. Patton, let me make a suggestion

15  because I think we've got the cart before the horse here.  I

16  think the issue I need to address first is -- and I think I'm

17  going to have Mr. Trabold come up and do this first, is I'm

18  going to have the government address your contention, factual

19  contention, that there is an office-wide policy, that whereby

20  the government will not move for the third point any time a

21  suppression motion is filed, regardless of the amount of work

22  that's involved.  I need to first get that thing resolved.  Let

23  me talk to him.  All right, Mr. Trabold, do you want to come up

24  here.

25          MR. TRABOLD:  Your Honor, there simply is no such

4

1   policy.  The U.S. Attorney's Office policy is encapsulated in

2    footnote 1 of our brief. Even factually, recently the

3    government has moved for the third point, just off the top of

4    my head, the Alesha Eberle case, where she filed a motion to

5    suppress. So it's simply not the case that there's a blanket

6    policy to not move for the third point any time a defendant

7    files a motion to suppress.

8        THE COURT: In other words, you can represent as an

9    officer of the court, based upon your knowledge of what's going

10   on in your own office, that the mere filing of a suppression

11   motion in and of itself as a blanket policy will not preclude

12   the government from moving for the third point?

13       MR. TRABOLD: That is correct. That is because

14   different cases present different factual, not only in a case

15   where the offense facts are different from every other case,

16   but also just from a procedural standpoint, there may be

17   reasons why the government would decide to move for the third

18   point, even in situations where a defendant has filed a motion

19   to suppress.

20       THE COURT: All right, let's switch now. That

21   addresses that question.

22       MR. PATTON: Your Honor, I just want to respond to

23   that in this way. I have been informed by two separate

24   Assistant United States Attorneys in the Erie office that they

25   had been informed by their Pittsburgh office that if a plea

5

1   agreement, a proposed plea agreement was sent down, wherein

2   someone was requesting a conditional plea --

3        THE COURT:  So they could take an appeal on a

4   suppression issue?

5        MR. PATTON:  So they could take an appeal.  And if a

6   motion to suppress had been litigated and the government had to

7   put witnesses on, that there would not be -- the plea agreement

8   wouldn't be approved with the third point.

9        THE COURT:  Is that, based on your understanding, is

10   that because of the conditional plea or because of the fact the

11   thing was litigated in the first instance?

12        MR. PATTON:  I don't know.  I want to make something

13   clear here, I'm not trying to get anybody in trouble and I'm

14   not calling Mr. Trabold a liar, saying that he's untruthful.

15   What I am telling you is I have personally been told that look,

16   if we have to put a witness on to litigate a motion to

17   suppress, no third point.  And I've been told that by two

18   separate assistants. So, I mean, obviously, in the Eberle case

19   there was a motion to suppress and witnesses were called and

20   the government has asked for the third point. So it's

21   happened. But that's what was told me.

22        THE COURT: Well, all that having been said, the

23   fact that assuming for the sake of discussion there is not in

24   fact, as history would at least suggest, and as Mr. Trabold has

25   indicated, an office-wide policy to never move for the third


                              6


1    point in the face of a suppression motion. That having been

2    said, go on and address your argument in this particular case

3    anyways?

4         MR. PATTON: In this particular case, the government

5    has identified no conduct on Mr. Price's part to indicate that

6    he did not timely accept responsibility, other than the fact

7    that a motion to suppress was filed and litigated. Even though

8    in the footnote, the government says well, they take into

9    consideration whether the defendant has engaged in obstruction

10   of justice. There's been no indication that Mr. Price has done

11   that. In fact, the presentence report does not indicate that

12   Mr. Price should receive a two-level enhancement for

13   obstructing justice.

14          The government's footnote identifies the defendant's

15   conduct while on release or incarcerated pending resolution of

16   his case.  Well, Mr. Price has been incarcerated the entire

17   time, there's been no indication that he's done anything while

18   he's been incarcerated that would somehow fail to show

19   acceptance of responsibility on his part.

20          It says "whether the defendant has afforded the

21   government and the judiciary the ability to allocate their

22   resources efficiently."

23          THE COURT:  What page is that?

24          MR. PATTON:  It's page 14.

25          THE COURT:  I have it.


                              7


1          MR. PATTON:  Again, it lists "whether the defendant

2   has afforded the government and the judiciary the ability to

3   allocate their resources efficiently."  While in this case, as

4   we put forth in our papers, a plea agreement was reached in

5   four days after you ruled on the motion to suppress.  So it

6    became very clear that the government did not have to prepare

7    for trial, set aside time for a trial, and your Honor did not

8    have to set aside time on your calendar for a trial in this

9    case.

10         Finally, the government says, they consider "whether

11    the defendant has resolved his case in a manner consistent with

12    acceptance of responsibility."  And in this case the only issue

13    raised by the government is to try and claim that Mr. Price has

14    not resolved his case in a manner that was consistent with

15    acceptance of responsibility is the fact he litigated a motion

16    to suppress.  There is nothing, other than the litigation of

17    the motion to suppress, that can be motivating the government's

18    decision in this case not to ask for the third point.  And,

19    in fact, part of the whole government argument is well, we're

20    using our power over the third point to try and deter people

21    from filing motions to suppress.  If that is the avowed purpose

22    of not granting the third point, kind of -- as a condition

23    precedent to that, the denial of the third point is conditioned

24    on the fact that a motion to suppress was filed.

25         THE COURT:  I've read your papers, I'm familiar with

1    your position.  Let me talk to Mr. Trabold.

2        MR. TRABOLD:  Yes, your Honor.

3        THE COURT:  Just really briefly.  Just a

4    hypothetical, just for purposes of discussion.  A suppression

5    motion is filed based only a facial attack of the sufficiency

6    of an affidavit for probable cause.  Doesn't require

7    litigation.  Doesn't require -- wrong term, it doesn't require

8    a full-blown hearing, just requires the court to look at it and

9    make the determination.  As a general proposition, is that

10   defendant at a greater risk of losing the third point than

11   someone who never filed the facial attack on the affidavit?

12        MR. TRABOLD:  Just let me make sure I understand

13   your factual predicates for the hypothetical.  A defendant

14   files a suppression motion which doesn't require the government

15   to call any witnesses, in general terms?

16        THE COURT:  I mean there are two types of

17   suppression issues.  One, you got to have a hearing, the other

18   one is a pure question of law.  I'm talking about the other

19   kind, which we have around here frequently.  Is that defendant,

20   as a general proposition, recognizing your position that things

21  are case by case, has he or she weakened the likelihood that

22  they're going to see a third point -- as you understand the lay

23  of the land today?

24          MR. TRABOLD:  Well, as it relates to a defendant

25  that's never filed a motion to suppress?

9

1          THE COURT:  Yes, that never files one at all?

2          MR. TRABOLD:  Well, I would think that he would be

3  in a weaker position than a defendant that never files a motion

4  to suppress at all.  However, the way I understand our office's

5  approach to this issue, is the determination is made largely on

6  the amount of work that the government has to expend in

7  responding to the motion.

8          THE COURT:  In this case, because after all the

9  language of 3E1.1(b) does talk about trial preparation or the

10  equivalent thereof?

11          MR. TRABOLD:  Right.

12          THE COURT:  Tell me in this case, as the government

13  saw it, as you see it, why you believe that the government was

14  essentially put to the same test, if you will, in terms of

15  preparation, by virtue of getting ready and litigating this

16  suppression motion, as if you would have gone to trial?

17        MR. TRABOLD:  Well, this case is really the

18  discovery of the evidence and the circumstances surrounding the

19  search of the Price residence, were the entire case.  Counsel

20  makes reference to the fact that the government would have had

21  to call an expert witness.  I don't necessarily agree that the

22  government had to call any expert witness in this case.

23  Methamphetamine was found at Mr. Price's residence.  So that

24  fact in and of itself to me negates the calling of an expert

25  witness.  Even if we had to call an expert witness, that

10

1  testimony is not anywhere near as expansive and comprehensive

2  as counsel claims in his second filing.  But in this case, you

3  had the testimony of two officers that testified which was,

4  obviously, the sum and substance of the government's case in

5  chief here.  They went into the house -- there's an issue as to

6  whether consent was obtained or not, but they obtained consent,

7  and they discovered the meth making paraphernalia that were in

8  Mr. Price's residence.

9        Beyond that, the government had to prepare to

10   cross-examine Mr. Price's girlfriend, who ultimately did not

11   testify.  But not only did I have to prepare to cross-examine

12   her, I also had the agents go out and obtain what I would call

13   impeachment material on her, which we ordinarily do in a trial

14   setting.  They had to go get her prior criminal history, they

15   had to go get other things, perhaps were impeachment material

16   on her, past drug use, things like that.

17        This isn't a case where we have a complex

18   white-collar trial that would have taken the government two

19   months to put on its case in chief.  This is a case where I put

20   on my case in chief on in absolutely no more than a day and a

21   half.  And what I had to put on at the suppression hearing was

22   in fact the trial.  And it doesn't change that to say well, the

23   government would have to file voir dire questions or proposed

24   jury instructions because, at least from my experience in trial

25   preparation in federal court, those things are not all that

11

1   time consuming and often times you can piggyback that

2   preparation on the preparation that's done in a prior trial of

3  the same type.

4        THE COURT:  What do you make of this United_States
                            _____ _____

5  v._Vance case?
   __ _____

6        MR. TRABOLD:  Well, I don't make anything of it

7  because it occurs before the PROTECT Act, which means it's

8  entirely distinguishable from this case.  And it's also

9  distinguishable for all the other reasons I had in my brief,

10  which is that in Vance, no acceptance points were provided at
                     _____

11  all for Mr. Vance.  Whereas, in this case, the government is

12  agreeing that Mr. Price should get the recognition of two

13  points for his acceptance of responsibility.  And to me that's

14  a significant difference.  In Vance, the government was saying
                               _____

15  absolutely, he's entitled to nothing.  Whereas here, we're

16  saying we're willing to go a considerable amount of the way

17  down the acceptance of responsibility road, we're giving him

18  two points.  The only issue here is whether he's entitled to

19  the third point.  And Vance sheds no light on -- the heart of
                         _____

20  the matter here is whether under the PROTECT Act amendments to

21  the Sentencing Guidelines, acceptance of responsibility

22    provision, the government can withhold a third point in this

23    case.  Any case that counsel cites that predates the PROTECT

24    Act is of no help whatsoever.

25            And the government cites a case from the Ninth


                                12


1    Circuit that is subsequent to Vance, where the court says well,
                        _____

2    we know you're citing Vance as the idea that you can't withhold
                        _____

3    the point for somebody exercising their constitutional right.

4    I think that's Espinoza-Cano.  But we don't find Vance to be
                _____              _____

5    persuasive in the case.  And the reasoning in Espinoza-Cano is
                                        _____

6    the same reasoning that applies here.

7            THE COURT:  Let me ask you just a couple other

8    questions, then we'll start to wind this thing down.  One of

9    the articulated reasons for not moving for a point in the

10    government's papers was the desire to deter frivolous

11    suppression motions.  Absent a situation where the government

12    was in fact required to engage, by its lights in the same type

13    of preparation for a hearing, a suppression hearing, that would

14  have been required to prepare for trial, is the desire to chill

15  people from filing suppression motions to weed out the

16  frivolous ones, a legitimate and non-arbitrary reason in and of

17  itself, given the fact that 3E1.1(b) talks about avoiding

18  preparing for trial?

19       MR. TRABOLD:  Well, I think it is a legitimate

20  government interest, to seek to not reward people for filing

21  motions that are frivolous.  Obviously, the government is on a

22  more solid footing, I think, just by the pure factual

23  circumstance, if there is lengthy litigation over a suppression

24  motion -- by way of example, a suppression motion that takes

25  two or three days to litigate, where the government, both the

13

1  government and the defense put on all sorts of witnesses.

2  That's a situation where perhaps there's more meat to the

3  government's claim.  But I don't think it's an illegitimate

4  government claim for the government to say part of what we're

5  trying to do here is to prevent defendants from filing

6  frivolous motions under the context that if they do so, there

7  will be no penalty for doing so.  And really the frivolous

8   motion animus that the government has ties with one of, to me

9   the most important reason that we gave in our filing here for

10   why we should be allowed to do this.  And that is simply this,

11   and counsel has provided no contrary argument to this.

12          Defendants like Mr. Price should not be on the same

13   footing with a defendant that is indicted, almost immediately

14   pleads guilty, waives his right to file, really any appeal,

15   subject to very minor limitations in the plea agreement, and

16   goes on his way after sentencing.  Those two defendants should

17   not be on the same footing.  And to give Mr. Price the same

18   acceptance of responsibility points, after he litigated a

19   motion to suppress and obtains a conditional guilty plea, which

20   obviously means he's going to appeal to the Third Circuit the

21   whole suppression issue and rehash the whole thing all over

22   again, to give him the same acceptance of responsibility points

23   as somebody that comes in and pretty much pleads guilty and

24   does not ask for a conditional plea, does not seem right to me.

25   And it is well within the government's purview to differentiate

14

1   between defendants.  And there's just no response from counsel

2    in his filings as to why the government shouldn't be allowed to

3    do so.  In fact, in the Jones case, the court talks

_____

4    specifically about the government's interest in curtailing the

5    filing of frivolous motions.

6            THE COURT:  Is that that district court case?

7            MR. TRABOLD:  Correct.

8            THE COURT:  Where was that from?

9            MR. TRABOLD:  The Eastern District of Virginia.

10            THE COURT:  And, finally, since we last talked about

11    this, are you aware of any cases in this circuit that address

12    this issue?

13            MR. TRABOLD:  I think we found one unreported

14    case -- I don't want to say it specifically addresses the

15    issue, it's kind of on a tangential point.  I am not aware of

16    any Third Circuit case that is directly on point.

17            THE COURT:  All right, thank you.  All right, Mr.

18    Patton, do you have anything else that you want to say to me.

19    Are you aware of any other cases?

20            MR. PATTON:  Not in this circuit.

21            THE COURT:  Much less down in Pittsburgh?

22            MR. PATTON:  I am not.

23    THE COURT:  All right.

24        MR. PATTON:  When I e-mailed my office down there

25  asking anyone down there if they have any experience with it,


15


1  they have not.

2        MR. TRABOLD:  I don't mean to interrupt, this

3  dovetails to that, I talked to our criminal division chief in

4  preparation for this, he wished me luck in forging new ground,

5  I don't know if the issue has ever come up --

6        THE COURT:  Why didn't he wish me luck, I'm the one

7  who has to do it.  All right, go ahead.

8        MR. PATTON:  Judge, in response to Mr. Trabold's

9  claim that we have no response to the government arguing that

10  Mr. Price should not be treated the same as a person who

11  doesn't file a motion to suppress, that's just wrong.  Our

12  reply relied primarily on the Fifth Circuit's Washington
                                _____

13  opinion.  We pointed out that filing a motion to suppress has

14  nothing to do with factual innocence.  Acceptance of

15  responsibility is saying I accept what I did, and what I did

16  was wrong.  But the guidelines say a person who says I admit I

17  engaged in this conduct, but I don't think it violates this

18  particular law or I think this law is unconstitutional, they

19  can challenge the constitutionality of that section, and

20  Section 3E1.1 says you can still get acceptance of

21  responsibility because you're admitting what you did.

22      As the Washington court pointed out, when you're
        _____

23  dealing with someone who is filing a motion to suppress, they

24  aren't arguing their guilt or innocence.  The whole reason you

25  want the stuff suppressed is because it generally tends to show


16


1  that you're guilty.  But it's not a question of giving up and

2  saying they didn't find this stuff in my house, I didn't

3  manufacture meth or attempt to manufacture meth.  It's simply

4  saying they violated the Fourth Amendment in gaining this

5  evidence.  That doesn't have anything to do with factual guilt.

6  And the person who pleads guilty without filing any motions,

7  that, I would submit to you, is more of a function of their

8  attorney looking over the case and saying there just isn't any

9  potential motion to suppress here.

10        I think the Fifth Circuit's response in Washington

_____

11  to this argument about trying to chill the filing of motions to

12  suppress, is very relevant.  In that motions to suppress are

13  not designed solely to benefit the defendant in a particular

14  case.  The Fourth Amendment, in the exclusionary rule, in the

15  litigation of the Fourth Amendment issues, is designed to deter

16  future police misconduct.  The Supreme Court has said again and

17  again the purpose of the exclusionary rule is not to punish the

18  individual officer who may be found to have violated the Fourth

19  Amendment.  It is not intended to reward the defendant, that's

20  not its purpose.  Its purpose is to deter law enforcement from

21  engaging in future violations of the law.  And you don't have

22  to -- a defendant does not necessarily have to win on the

23  merits of a motion to suppress for that purpose to be achieved.

24  If following the hearing in Mr. Price's case, Agent Schirra is

25  more careful the next time he gets a third-party


17


1  consent in a case, that motion has had a beneficial impact.

2  We actually won part of the motion --

3          THE COURT:  Or if the circuit reverses my decision?

4        MR. PATTON:  Correct, if they clear up the law.  Mr.

5   Trabold talked about the Eberle case.  We litigated that motion

6   to suppress in Eberle.  You ultimately found that it should not

7   be suppressed.  But if Detective Lynn, after going through what

8   she went through on the stand, does a better job the next time

9   she does a forensic evaluation of a computer and documents that

10  better, then that motion has served its larger purpose of the

11  exclusionary rule.

12       Your Honor, we operate in an adversary system.  The

13  preamble to the Professional Rules of Conduct say that "as an

14  advocate, a lawyer zealously asserts the client's position

15  under the rules of an adversary system."  Allowing one of the

16  parties to the adversary system to act as arbiter of the merits

17  of the other party's motion, is contrary to the entire system.

18  Of course, the government is going to think that a motion to

19  suppress doesn't have any merit.

20       THE COURT:  I didn't draft the PROTECT Act.

21       MR. PATTON:  The people who did draft the PROTECT

22  Act told you why it was that they were giving the government

23  the power over the third point.  They specifically stated that

24  the reason that the third point was now going to require a

25    government motion was because the government would know if it

18

1    had to prepare for trial.  They did not say that the government

2    was being given power over the third point so that the

3    government could police the filings of motions to suppress.

4        THE COURT:  All right, I have your point.  Go ahead.

5        MR. PATTON:  With the case law, United_States_v.
         _____  _____  __

6    Espinoza-Cano, it distinguished Vance because the Ninth Circuit
     _____          _____

7    said look, in the Ninth Circuit if you do a stipulated bench

8    trial, you're not entitled to the acceptance of responsibility

9    because that is different than pleading guilty.  That was the

10   way they distinguished Vance.  In the 11th Circuit case the
                          _____

11   government relied on, United_States_v._Gonzalez, there was a
                           _____  _____  __  _____

12   four-day suppression hearing.  But, also, the 11th Circuit

13   never mentioned Wade, the Supreme Court's decision in Wade at
                     ____                               ____

14   all -- regarding the government's refusal to make a motion, it

15   had to have a rational relation to a legitimate government

16   argument.

17          I've looked at the transcript of the suppression

18   hearing before I came down here.  The hearing started at 9:45

19   a.m., and ended at 11:40 a.m.  That's an hour and 45 minutes.

20   Some of which was argument.  So I just do not see how under any

21   set of circumstances that can be called, preparing for that

22   hearing can remotely be equated with preparing for trial.  And

23   Mr. Trabold's explanation for how the government makes its

24   decision, there's an internal paradox there.  The more work

25   they have to put into defending the motion, the more


19


1   preparation they've had to do, therefore, they don't want to

2   file the third point.  But the more merit the motion has, the

3   more effort it's going to take for them to defend it.  And,

4   therefore, what's going to happen is they're going to have to

5   put more work on the ones that actually have merit, so those

6   are the people that aren't going to get the third point.

7          THE COURT:  One would think, just as an aside, that

8   that would be true as a general proposition.  I can tell you

9   that I have spent on occasion more time trying to figure out

10  what's going on in a bad brief than I have in a good brief, but

11  be that as it may.

12         MR. PATTON:  Finally, the thing about frivolous

13  motions.  The court always has a vehicle within which to punish

14  the filing of frivolous motions.  It is unethical to file a

15  frivolous motion.

16         THE COURT:  Well -- I'm not going to editorialize.

17  I have your point.

18         MR. PATTON:  I would submit that this was not a

19  frivolous motion in this case.

20         THE COURT:  I do not consider it to have been a

21  frivolous motion.

22         MR. PATTON:  In fact, we went through a couple

23  rounds of briefing because there was a lot of meat there.  And,

24  your Honor, if you find that you can't give the third point,

25  there is a basis for exercising your Booker discretion.

                       ———

                       20

1  Because when the Sentencing Commission made up this sentencing

2  table that contains these suggested ranges, that was written

3  with a understanding and a belief that if a person pled guilty

4    in a timely manner, so that there wasn't preparation for trial,

5    that they would get the third point.  So if the government

6    starts using other considerations in denying the third point,

7    then that unnecessarily skews the sentences under the

8    guidelines.  And it skews them higher than the Sentencing

9    Commission envisioned.  And so that is a legitimate reason for

10   you when you're exercising your discretion under 3553(a), to

11   say -- if you conclude, the PROTECT Act says the government has

12   this ability, whether I agree with it or disagree with it,

13   they've not moved for the point, so I can't give the third

14   point.  You then are entitled to say I think this is resulting

15   in the guidelines, the advisory guideline range, calling for

16   more time than what the Sentencing Commission intended.  And

17   that is a legitimate reason for you to exercise your

18   discretion.

19          THE COURT:  All right, thank you, Mr. Patton.

20   Incidentally, just for the record, this is the only objection

21   filed to the report, isn't it?

22          MR. PATTON:  Your Honor, there were two other

23   objections that don't go to the merits.

24          THE COURT:  We'll get to them.  This is the only one

25   that really would affect the guideline calculations, though?

21

1      MR. PATTON:  That is correct.

2      THE COURT:  We'll get to the other ones later then.

3  This is an order.

4                    ORDER

5      The defendant objects to the government's refusal to

6  move pursuant to U.S.S.G. Section 3E1.1(b), that the defendant

7  receive a third point for acceptance of responsibility.

8  Section 3E1.1(a), provides:

9          "If the defendant clearly demonstrates acceptance

10          of responsibility for his offense, decrease the

11          offense level by two levels."

12   Section 3E1.1(b) provides:

13          "If the defendant qualifies for a decrease under

14          subsection (a), the offense level determined prior

15          to the operation of subsection (a) is level 16 or

16          greater, and upon motion of the government stating

17          that the defendant has assisted authorities in the

18          investigation or prosecution of his own misconduct

19          by timely notifying authorities of his intention to

20          enter a guilty plea, thereby permitting the

21          government to avoid preparation for trial and

22          permitting the government and the court to allocate

23          their resources efficiently, decrease the offense

24          level by one additional level."

25          This version differs from its predecessor in that by


22


1   virtue of changes made under the PROTECT Act, discretion to

2   move for the point is now vested exclusively in the government.

3   I also note, parenthetically, that Application Note 6 to

4   Section 3E1.1 provides in pertinent part:

5          "Because the government is in the best position to

6          determine whether the defendant has assisted

7          authorities in a manner that avoids preparing for

8          trial, an adjustment under subsection (b) may only

9          be granted upon a formal motion by the government at

10          the time of sentencing."

11          The first question that the court must answer is

12   what is the appropriate standard for the court to apply in

13   resolving a challenge to the government's refusal to move for a

14   third point.  In United_States_v._Moreno-Trevino, 432 F.3d 1181
        _____  _____ __ _____

15   (10th Cir. 2005), the court had the occasion to address that

16   issue in some detail.  The court observed:

17          "Unlike Section 5K1.1, few courts have considered

18          the government's discretion to file a Section

19          3E1.1(b) motion after the PROTECT Act amendment.

20          The Eighth Circuit concluded that 'the government's

21          failure to file a Section 3E1.1(b) motion must be

22          rationally related to a legitimate governmental

23          end'."  Citing United_States_v._Smith, 422 F.3d 715,
               _____ _____ __ _____

24          728, (8th Cir. 2005).  "The Sixth Circuit recently

25          stated that a pre-Booker Booker defendant 'was not


                            23


1           entitled to a remedy [under Section 3E1.1(b)],

2           unless the claim alleged that the prosecutor's

3           decision not to bring a motion was based on a

4           constitutionally impermissible motive such as race

5           or religion'."  United_States_v._Smith, 429, F.3d
               _____ _____ __ _____

6       620, 628 (6th Cir. 2005) ...

7    The Moreno-Trevino court continued:

_____

8           "For several reasons we conclude that prosecutors

9            should be afforded the same discretion to file

10           acceptance of responsibility motions under Section

11           3E1.1(b) as substantial assistance motions under

12           Section 5K1.1.  First, the text of Section 3E1.1(b)

13           and its accompanying commentary indicate that

14           prosecutors have considerable discretion to file a

15           motion.  The language in the amended Section 3E1.1

16           resembles the language found in Section 5K1.1; under

17           both sections, a defendant can obtain an additional

18           adjustment only 'upon motion of the government'.

19           More specifically, a Section 3E1.1(b) motion must

20           state that a defendant's timely notification of

21           pleading guilty 'permitted the government to avoid

22           preparing for trial and permitted the government and

23           the court to allocate their resources sufficiently'.

24           The recent amendment also added an Application Note

25           stating that 'the government is in the best position

1      to determine whether the defendant assisted

2      authorities in a manner that avoids preparing for

3      trial'.  U.S.S.G. Section 3E1.1 cmt. n. 6.  Thus,

4      the government defines what constitutes timeliness

5      and what constitutes trial preparation, and once

6      those terms are defined the government has an

7      evidentiary advantage."  Citing Etienne, and that's
                            _____

8      at pages 1185-1186.  See also United_States_v.
                            _____ _____ __

9      Espinoza-Cano, 456 F.3d 1126, (9th Cir. 2006),
       _____

10     where the court noted that it was joining the

11     6th, 8th and 10th Circuits in applying the same

12     standard in reviewing a refusal to file a motion

13     under 3E1.1(b), as it would in the context of a

14     failure to file a 5K motion.  Specifically, whether

15     that refusal was based on an "unconstitutional

16     motive, (e.g., racial discrimination), or

17     arbitrarily (i.e., for reasons not rationally

18     related to any legitimate governmental interest."

19     Id. at 1136.

20          In the absence of any specific direction to the

21   contrary from the Third Circuit, I find that the approach

22   described in the above cases, in reviewing a refusal to move

23   under Section 3E1.1(b), is appropriate.  As an aside, I should

24   also add that I do not find in this case that the defendant's

25   reliance on United_States_v._Vance, 62 F.3d 1152 (9th Cir.

25

1   1995), is well placed.  First, it was a PROTECT Act case; and

2   second, I do disagree with that court's blanket statement, to

3   wit:

4          "The amount of preparation by a prosecutor, and the

5           amount of court time which must be scheduled, are

6           far greater for a trial than for a motion to

7           suppress."

8          That statement may or may not be true.  But, in any

9   event, it depends on the particular facts and circumstances of

10   each case.  That said, as a factual matter, based upon the

11   representations made by the Assistant United States Attorney

12   here, and the fact that I can take notice of the fact that

13   there have been in the past 3E1.1(b) motions filed, even after

14   a suppression motion had been filed, I do not find as a factual

15   matter that there exists an official office-wide policy by the

16   U.S. Attorney to refuse the point any time a suppression motion

17   is or was filed.  It's important that I stress this, though.

18   In my view, such an across-the-board policy would be arbitrary

19   and not rationally related to any legitimate governmental

20   interest.  Such a per se refusal would not reflect the type of

21   case-by-case analysis and appropriate exercise of discretion

22   that in my view Section 3E1.1(b) requires.

23          Here, the government argues that its refusal to move

24   for the point was based in part upon its extensive preparation

25   for the suppression hearing, which it likens essentially to the


26


1   same effort or similar effort that would have been required of

2   it if it had proceeded to trial.  Specifically, in this regard,

3   the government argues in its papers the following:

4          "In this case the suppression hearing testimony

5           presented by the government was the overwhelming

6           majority of the evidence that would have been

7         presented at trial.  The case simply involved the

8         discovery of methamphetamine making materials on

9         Price's property after a consent search conducted by

10        two officers.  The two officers that conducted the

11        consent search were the two officers that testified

12        at the suppression hearing.  All that remained for

13        trial was the largely administrative, and most often

14        stipulated to, task of admitting the drug evidence

15        and the laboratory report.  The suppression hearing

16        testimony was, in reality, the trial testimony."

17   The government then continued:

18        "Moreover, the government had anticipated that Price

19        would call his girlfriend/common law wife to testify

20        at the suppression hearing since her consent was

21        critical to the suppression issue.  The government

22        was aware from defense counsel that she would be

23        present at the hearing and was, in fact, being

24        brought back from California to testify.

25        Ultimately, she was present at the hearing but did

27

1        not testify.  Nevertheless, the government expended

2        resources preparing to cross-examine her and

3        compiling her prior record information and other

4        impeachment materials."  (Pages 14 through 15 of the

5   government's response to defendant's objection to paragraph 28

6   of the presentence report.)

7        I find that the government's refusal to move on this

8   basis to be in this case a legitimate exercise of its

9   discretion.  Having presided over the suppression hearing, I do

10  not find the government's contention as to the preparation

11  required and its similarity to trial to be unfounded.  In

12  short, I find where the government has been required to

13  litigate a suppression motion and the hearing itself requires

14  preparation and presentation of evidence, consistent with the

15  effort that would have been required for trial, the

16  government's failure to move on this basis represents a

17  legitimate exercise of its discretion and is rationally related

18  to a legitimate governmental end.  That said, I do not find

19  that the desire to chill the filing of frivolous suppression

20  motions, which by the way Mr. Price's clearly was not, or a

21  desire to conserve resources by denying the point every time a

22  defendant enters a conditional plea to preserve his or her

23  right to appeal a denial of a suppression motion, to be

24  legitimate reasons to deny the point.  The appropriate focus,

25  again, is whether or not on a case-by-case basis the government

28

1  was required de facto to prepare for trial by virtue of the

2  nature of the suppression hearing.  So the objection is

3  overruled.

4         All right, what are the other ones, Mr. Patton, that

5  were not substantive?

6         MR. PATTON:  Your Honor, one of them was to

7  paragraph 9, which stated that Mr. Price had sold

8  methamphetamine to Agent Schirra.  Mr. Price denies that

9  happened.  Mr. Price had been charged with delivery of

10  methamphetamine by Agent Schirra in the state court, those

11  charges were ultimately dismissed.  Paragraph 9 also indicates

12  that Mr. Price had alluded the agents from the time of that

13  alleged sale of drugs in April of 2002 until October of 2004.

14  In reality, the charges against Mr. Price that Agent Schirra

15  initially filed, weren't even filed until February of 2004.  So

16  there wasn't any alluding then, there weren't any charges

17  pending.  Even after the charges were filed, Mr. Price was

18  living in the same house, working at the same garage, they

19  didn't just go to look for him until that time.  I know that

20  doesn't impact the sentence, but it is important to Mr. Price.

21  That's in paragraph 9 of your report, your Honor.

22          In paragraph 10 the report states the police

23  obtained consent to search Mr. Price's house.  Of course, it is

24  our contention the police did not receive a valid consent to

25  search Mr. Price's house.


29


1          THE COURT:  All right.  Those objections are noted.

2          I make the following findings now with respect to

3  the calculations.  The total offense level applicable is 26.

4  With a criminal history category of V.  Statutory provision as

5  to custody not more than 20 years.  Guidelines 110 to 125

6  months.  Statutory provision as to probation one to five.

7  Guidelines ineligible.  Statutory provision as to supervised

8  release at least three years.  Guidelines three years.

9  Statutory provision as to a fine $1 million.  The guidelines

10    $12,500 to $1 million.  Restitution is inapplicable under both

11    the guidelines and the statute.  A special assessment of $100

12    applies with respect to both.  All right, Mr. Patton.

13          MR. PATTON:  Your Honor, I would submit that you

14    should give Mr. Price a sentence within a range of 100 to 125

15    months, which is the range he would have been in had the

16    government filed a motion.  The finding by yourself that the

17    government's belief that it had to prepare for trial was

18    reasonable, does not have to equate to a finding that you agree

19    with that, you are limited by what you have found the

20    guidelines state.  In attesting that the government's decision

21    to be reasonable.  It doesn't mean that you have to agree to

22    it.  All I can say is there is no way in the world you can

23    convince me, after practicing in federal court for 10 years,

24    that preparing for a motion to suppress that lasts two hours is

25    the same thing as preparing for trial.

30

1           THE COURT:  Well, to put a finer point on it and I

2     know I've already done the order, the fact of the matter

3     remains the test is not -- well, let me make two points.  The

4   case law indicates that (a), the government is allegedly in the

5   best position to know how it was required to prepare.  And I

6   suppose there's a good reason for that.  I'm not sitting over

7   their shoulder as they're doing that.  And the standard is

8   arbitrariness.  To put a finer point on it, those factors in

9   part drove my decision, too.  I understand your point.

10       MR. PATTON:  To the extent there is some feeling

11  that well, Congress has said this is the way it has to be, so

12  that's the way it has to be.  I would submit to your Honor that

13  we have been there before --

14       THE COURT:  I was there before, has anything

15  happened on that case; just for the record, the case?

16       MR. PATTON:  United_States_v._Jaime.

17       THE COURT:  Which is on appeal right now?

18       MR. PATTON:  Correct.  Where the issue was whether

19  you could consider a 100-to-1 crack to powder disparity in

20  imposing sentence.  And the government made the argument, which

21  you accepted, that hey, Congress set this 100-to-1 ratio, for

22  me to not follow that would be to not honor Congress's will on

23  the matter.  And the Third Circuit found that in United_States

24  v._Gunter to be wrong.  Saying that as long as Congress gets to

__ _____

25  set the mandatory minimum and they get to set the maximum, but

31

1  anywhere in between is up to you.  In effect by saying you

2  couldn't deviate from the 100-to-1 ratio, that that was

3  treating the guidelines in effect as mandatory.

4          So I would submit in this case, to the extent that

5  there is a belief that well, Congress says that the government

6  gets their say on the third point and, therefore, I'm powerless

7  to do anything over it, may be correct when you were deciding

8  what the advisory guideline range is, but as the Third Circuit

9  has said, you then have another step of when you decide what

10  the actual sentence is, based on the factors set forth in Title

11  18, United States Code, Section 3553(a), where you have to give

12  a sentence that is "sufficient but not greater than necessary"

13  to achieve the purposes of sentencing.  That you can put your

14  beliefs, as the sentencing judge, into play and say look, I

15  realize that when the Sentencing Commission wrote these

16  guidelines and established this sentencing table, they were

17  doing that with the belief that if someone pled guilty well in

18   advance of any proposed trial date, that they'd get the third

19   point.

20        And I would stress the point that I made in our

21   papers that since you came onto the federal bench, I would be

22   willing to bet you have never before today had a defendant not

23   get the benefit of the third point based solely on the fact

24   that the government had to litigate a motion to suppress.  And

25   there's no reason why there should be a distinction between all

32

1   those people that got sentenced before and people that get

2   sentenced now.

3        THE COURT:  All right.  Whatever the range is,

4   address the merits of this particular case as to where -- as to

5   how you think that should impact on my thinking?

6        MR. PATTON:  Your Honor, Mr. Price obviously has a

7   methamphetamine addiction problem.  He has written a letter to

8   your Honor expressing the fact that he understands that.  And

9   understanding that it's his problem, he's responsible for the

10   conduct he engaged in based on that addiction.  And that he is

11   responsible for hurting his children and his loved ones by

12  allowing his addiction to run his life.

13      He is currently serving an Ohio sentence, but it is

14  important to stress that he was charged with the Ohio offense

15  prior to being charged here.  So it's not like he got charged

16  here and went out and committed a new offense.  That when you

17  are sentencing him, that a sentence, I would submit, within the

18  range of 100 to 125 months is more than adequate to punish him

19  for this offense.

20      They found methamphetamine manufacturing equipment

21  in his house.  But he was not in the process of manufacturing

22  methamphetamine.  There was no evidence, to the extent when he

23  was manufacturing methamphetamine, that he was doing it in the

24  house.  That he had put anyone in danger during the

25  manufacturing process.


33


1       He has tried to maintain a good relationship with

2   his kids.  And has coached his kids baseball team.  Mr. Price

3   is an intelligent man.  When you sit down and you speak with

4   him, he's not dumb.  He has done some very stupid things.  And

5   he has allowed methamphetamine to cause him to engage in

6   criminal conduct.

7       But he's dealing with some severe diabetes right

8   now.  His insulin, they keep raising it, so he's been dealing

9   with that.  He's been having trouble in the Erie County Prison

10   getting that worked out.  So thankfully he's being sentenced,

11   so he can get back to the Ohio Department of Corrections, where

12   they were doing a much better job of regulating his blood

13   sugar.

14       THE COURT:  Are you saying he's not getting his

15   medication over there?

16       MR. PATTON:  He's getting it, but he's gone through

17   four different doctors, since the time he's been at Erie County

18   they've had four different staff doctors go through.  They

19   haven't been able to get his blood sugar stabilized.  They've

20   given him insulin, but they're changing the amounts of the

21   insulin.  And I'm not saying any one of them necessarily is

22   being callous towards his needs, but the fact of the matter is

23   the health care at the Erie County Prison just isn't good.

24       But I would ask that you take into account the

25   letters that were written on Mr. Price's behalf that we have

34

1    submitted to you.

2            THE COURT:  The record should reflect I did receive

3    those and have reviewed them.

4            MR. PATTON:  I've spoke with Mr. Price about his

5    right of allocution, he does want to rely on his letter.

6    He is not, he doesn't consider himself to be a good

7    extemporaneous speaker, so he wanted to put his thoughts down

8    in writing and submit it to your Honor that way.

9            THE COURT:  All right, thank you.  Mr. Price, just

10   to be clear, you understand that you do have the right to speak

11   to me now at time of sentencing, but is your lawyer correct

12   that although you understand that, you choose to waive that

13   right?

14           THE DEFENDANT:  Yes.

15           THE COURT:  All right.  Okay, Mr. Trabold.

16           MR. TRABOLD:  Well, your Honor, as I understand

17   counsel's point, his point is that, essentially, even though

18   you found that the government was correct in withholding the

19   third point, you should still basically accord Mr. Price the

20   same sentencing ranges as if he was entitled to the third

21   point.  And it just doesn't make any sense to me.  I don't know

22  why Mr. Price should be placed in the same sentencing range as

23  if you accorded him the third point, when you already

24  established that he is not entitled to the third point.

25          Separate and apart from that, the record in this

35

1  case indicates an individual that obviously hasn't been able to

2  control his behavior and conform his behavior to the law.  And

3  what perhaps is the most troubling aspect of the presentence

4  report, is the description of his Ohio conviction where he was

5  arrested on March 30, 2005.  Which is approximately six months

6  subsequent to the search of his residence that forms the basis

7  for the case we're here on today, which occurred back in

8  October of 2004.

9          And what's troubling to me about this, Mr. Price and

10  the letters from Mr. Price's family portray an individual that

11  is generally an upstanding citizen with a drug problem and

12  those types of things.  That is belied by this conviction in

13  Ohio.  Not only was Mr. Price in a vehicle with a whole host of

14  methamphetamine making materials, six months after his

15  residence was already searched by law enforcement authorities,

16  which one would have hoped to cause him to conform his behavior

17  to the law, not only was he in a vehicle with methamphetamine

18  making material, he was in the vehicle with a 10-year-old boy

19  with the methamphetamine making material in the car.  And there

20  was a loaded stolen firearm in the car.  That is not conduct

21  that is indicative of somebody that is willing or able to

22  conform their conduct to the requirements of the law or

23  necessarily all that interested in rehabilitating himself.

24      Mr. Price has seven prior convictions.  And also

25  troubling to me, he bases his claims here today or at least his

36

1  counsel does, primarily on the notion that he's got a substance

2  problem with methamphetamine and he's a methamphetamine addict.

3  However, the presentence report indicates that at no time has

4  he ever tried to obtain any substance abuse treatment.

5      Your Honor, the facts of this case, the

6  circumstances of Mr. Price's background, as well as the

7  troubling aspects of the Ohio case, call for a sentence, I

8  submit to you, of nothing less than 10 years.  I think there

9  are multiple factors in this presentence report which should

10  cause you to give Mr. Price a sentence closer to the high end

11  of the range than the middle of the range.  Thank you.

12       THE COURT:  All right.  Pursuant to Booker and its

———

13  progeny, I'm required to consider various factors in imposing

14  sentence.  Those would include, for instance, the nature of the

15  offense and, of course, in this case that involves the

16  manufacture of methamphetamine.  And that is, to put it mildly,

17  a very serious offense.  It is extremely addictive and

18  destructive.  And it's also extremely dangerous in its

19  manufacture to innocent people in the vicinity.

20       The PSI report does indicate that this defendant has

21  a long drug addiction problem.  Specifically, with

22  methamphetamine.  And it does appear to be that his rather

23  significant criminal history has been driven in some or large

24  measure by that addiction.

25       In a case like this, the protection of the public,


37


1  given the danger inherent in methamphetamine and its

2  production, is a very significant consideration.  And

3    deterrence is as well.

4         I also note that the defendant at the present time

5    is apparently serving a state sentence for methamphetamine, is

6    that right, Mr. Patton?

7         MR. PATTON:  That's correct, your Honor.

8         THE COURT:  So I've considered all of these factors

9    in fashioning the following sentence.

10        Would you please stand up, Mr. Price.

11        Pursuant to the Sentencing Reform Act of 1984, it is

12   the judgment of the court that the defendant, John Price Jr.,

13   is hereby committed to the custody of the Bureau of Prisons to

14   be imprisoned for a term of 115 months.  The term of

15   imprisonment imposed by this judgment shall run consecutively

16   to the defendant's imprisonment imposed in Franklin County,

17   Ohio, Court of Common Pleas, Docket No. 05-CR-258.

18        Upon release from imprisonment, the defendant shall

19   be placed on supervised release for a term of three years.

20        Within 72 hours of release from the custody of the

21   Bureau of Prisons, the defendant shall report in person to the

22   probation office in the district to which the defendant is

23   released.

24        While on supervised release, the defendant shall not

25  commit another federal, state or local crime; shall comply with

38

1  the standard conditions of supervision recommended by the

2  Sentencing Commission and adopted by this court; and shall

3  comply with the following additional conditions.

4      The defendant shall not illegally possess a

5  controlled substance.

6      The defendant shall not possess a firearm or

7  destructive device.

8      The defendant shall participate in a program of

9  testing and, if necessary, treatment for substance abuse as

10  directed by the probation officer, until such time as the

11  defendant is released from the program by the probation

12  officer.

13      Further, the defendant shall be required to

14  contribute to the costs of services for any such treatment in

15  an amount determined by the probation officer but not to exceed

16  the actual cost.

17      The defendant shall submit to one drug urinalysis

18  within 15 days after being placed on supervision and at least

19  two periodic tests thereafter.

20        It is further ordered that the defendant shall pay

21  to the United States a special assessment of $100, which shall

22  be paid to the United States District Court Clerk forthwith.

23        I find that this defendant does not have the ability

24  to pay a fine and, therefore, will waive a fine in this case.

25        Just as an aside, with respect to Mr. Patton's

39

1  request, that notwithstanding my finding under 3E1.1(b)

2  relative to the government's appropriate exercise of

3  discretion, that I nevertheless depart below the guideline

4  range.  Without deciding the issue, that is to say assuming for

5  the sake of argument only -- assuming that I could depart, I'm

6  not saying that I could, I can't, I'm trying to clear this up

7  on appeal because I don't want this to come back on this point,

8  my sentence would be the same.  It should be clear that my

9  refusal to depart was not necessarily based upon a conclusion

10  that I could not, it's a point I simply felt that I did not

11  have to decide.

12        Now, having said all that, Mr. Price, do you

13  understand that you do have the right to appeal this sentence

14  that I imposed here today?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you understand that if you choose to

17  do so, you must you do so within 10 days?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you have any requests, Mr. Patton?

20          MR. PATTON:  Yes, your Honor, we request that you

21  recommend to the Bureau of Prisons that Mr. Price be housed in

22  THE Bureau of Prisons facility in Victorville, California.

23  Mr. Price's girlfriend, Debbie Fischer, and their son are

24  residing in the Los Angeles area, so that would allow him to be

25  close to them.


40


1          THE COURT:  I'm going to make that recommendation.

2  I make that recommendation on the record.  Do you have

3  something to dismiss?

4          MR. TRABOLD:  We would move to dismiss Counts Two

5  through Seven.

6          THE COURT:  That's granted.  All right, we're in

7  recess.

8

9          (Whereupon, at 2:35 p.m., the Sentencing proceedings

10  were concluded.)

11

12                    - - -

13

14

15

16

17

18

19

20

21

22

23

24

25

41

1                    C E R T I F I C A T E

2

3

4

5        I, Ronald J. Bench, certify that the foregoing is a

6   correct transcript from the record of proceedings in the

7   above-entitled matter.

8

9

10

11   _____

12   Ronald J. Bench

13

14

15

16

17

18

19

20

21

22

23

24

25